## HENRY RECHTZIGEL v. NATIONAL CASUALTY COMPANY.[1]

### July 18, 1919.

### No. 21,314.

**Accident insurance — release — verdict sustained by evidence.**

    1. Upon a consideration of the evidence, it is *held* that it sustains a verdict in plaintiff's favor in an action on a policy of accident insurance as against a defense based on an alleged settlement and release of his claim for indemnity. The general rule applied in determining whether a verdict is sustained by the evidence extends to cases where an alleged fact must be established by a preponderance of clear and convincing evidence.

**Same — provision in policy inapplicable in case of settlement.**

    2. A provision of the policy requiring the insured to furnish physi-

[1] Reported in 173 N. W. 670.

cians' reports as a condition precedent to the maintenance of an action thereon, has no application where the insurer asserts that it has made settlement in full and is released from further liability.

**Same — total disability — care of physician.**

3. By the terms of the policy here involved, the insured was entitled to indemnity for total disability caused by accident, if he was under the care of a physician during the period of disability, even though there was no medical treatment of his injury.

**Same — right of insured not contingent after happening of accident.**

4. The liability of the insurer became absolute when the accident occurred and the right to indemnity, payable in future instalments, was not contingent upon the payment of premiums falling due after the date of the accident.

**Pleading — departure.**

5. A reply denying that settlement of all claims under the policy had been made, and alleging that, if a release of the claim of the insured was given, it was procured by the fraud of an agent of the insurer, is not a departure from the complaint, which alleged that no payment of the claim had been made.

**Charge to jury — admission of evidence.**

6. Alleged errors in the court's instructions to the jury and in rulings on the admission of evidence were without prejudice to appellant.

Action in the district court for Ramsey county to recover $1,340 upon an accident insurance policy. The facts are stated in the opinion. The case was tried before Dickson, J., who when plaintiff rested denied defendant's motion to dismiss the action and at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $1,500.80. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Rieke & Hamrum,* for appellant.

*John J. Keefe,* for respondent.

LEES, C.

Action to recover on an accident insurance policy in which plaintiff had a verdict, and defendant appeals from an order denying its alter-

native motion for judgment notwithstanding the verdict, or for a new trial.

Plaintiff was a carpenter and was injured by a falling timber on October 10, 1914. Under the policy he was entitled to $60 per month for not more than 24 consecutive months while wholly disabled from performing every duty of any business or occupation. He sued to recover $1,440 less $100 which had been paid him under circumstances presently to be related. The injuries, which were principally to his right leg, were first treated by Dr. Benepe and later by Dr. Hilger of St. Paul. He was in a hospital for treatment for about two weeks and then went to his home in St. Paul. On October 21, 1914, Dr. Benepe made a written report to the company, in which he stated that plaintiff would be able to attend to his duties in three or four weeks if no complications arose. In the month of November, 1914, plaintiff signed a proposal for a settlement in full of all claims against the company in consideration of the payment to him of $100. The proposal was originally dated November 17. Later on the date was changed to November 24, when the company gave him a check for $100, which he indorsed and cashed on the same day. Printed on the face of the check was a statement that by receiving and indorsing it the payee made "a full compromise settlement and release * * * of any and all claims" under the policy. The principal defense was that plaintiff's claim had been thus released. The answer pleaded the release as a bar to the action. In his reply. plaintiff alleged that he was induced to sign the proposal because defendant's agent falsely and fraudulently stated to him that it was merely a receipt for the $100 check, and that he was ignorant of its actual terms.

The testimony given by plaintiff and by Dr. Hilger was sufficient to establish total disability, as defined in the policy, due to the injuries received on October 10, and that such disability continued for 24 months thereafter. Plaintiff was, therefore, justly entitled to the maximum benefits provided for in the policy, unless his claim thereto was defeated by his acts or omissions subsequent to the date of his injury. That it has been so defeated is the contention of defendant's counsel, who, with earnestness and vigor, attack his right to recover upon the following grounds:

1. The court instructed the jury that plaintiff could not recover, unless he proved that he was led to sign the proposal and accept and indorse the check by reason of the fraud pleaded in the reply, and that he must establish the existence of the alleged fraud "by a fair preponderance of the clear and convincing evidence in the case." The sufficiency of the evidence to justify the jury in finding in plaintiff's favor on this issue under the instructions of the court is strenuously attacked.

We have inspected the original exhibits which defendant put in evidence and caused to be returned to this court. It appears therefrom that Dr. Benepe, in his report of October 21, stated that plaintiff had been totally disabled by reason of a fractured rib and a bruised knee, was confined to his bed eight days, had been up two days, and, if no complications arose, would be able to attend to his duties in three or four weeks. Four witnesses testified for defendant that, after this report was sent in, plaintiff sought to obtain a settlement of his claim in full without solicitation on the part of anyone representing defendant, and that no false statements were made and no deception was practiced in getting his signature to the proposal or his indorsement on the check. Plaintiff was alone in testifying to the perpetration of the alleged fraud upon him. There were some discrepancies in his testimony. Stress is laid on the report of his physician, which indicated that his injuries were much less severe than they subsequently proved to be. If they were no more serious than the doctor reported, $100 would fairly represent the amount plaintiff would be entitled to claim under the policy.

On the other hand, we are asked to consider the actual extent of plaintiff's injuries, the disability attendant upon them, and the inadequacy of the sum paid in settlement to compensate him therefor as his policy provided. We are also invited to consider plaintiff's testimony that he went to the office of defendant's agent in December and January to get the money which he claimed was due him for those months, and his employment of his present attorney early in February to enforce payment of his claim. It is argued that these acts, closely following the alleged settlement, indicate that plaintiff did not know that he had signed away his right to claim further benefits under the policy.

After giving careful consideration to the points made in the briefs and arguments, we have concluded that there was sufficient evidence to

143—M. 20

sustain a finding adverse to defendant upon the issue now under consideration. The general rule by which appellate courts are governed in passing upon the sufficiency of the evidence to justify a verdict or finding is clearly stated in Maroney v. Minneapolis & St. L. R. Co. 123 Minn. 480, 144 N. W. 149, 49 L.R.A.(N.S.) 756. It applies to cases like this where plaintiff is bound to establish his claim, not by a mere preponderance of evidence, but by a preponderance of clear and convincing evidence. Oertel v. Pierce, 116 Minn. 266, 133 N. W. 797, Ann. Cas. 1913A, 854.

2. The policy provides that as a condition precedent to a recovery, the assured must "furnish the company, every thirty days, with a report from the attending physician," and that indemnity will be paid only for the time he is under the care and regular attendance of a legally qualified physician. No physician's reports were furnished after the alleged settlement was made. But since it was made defendant has asserted and still asserts that plaintiff has no right to further benefits. It stands upon the release, hence it would have been useless to furnish reports after November 24, 1914, and plaintiff was not bound to furnish them in order to maintain this action. The law as to this is well settled. Zeitler v. National Casualty Co. 124 Minn. 478, 145 N. W. 395; Dechter v. National Council K. & L. of S. 130 Minn. 329, 153 N. W. 742, Ann. Cas. 1917C, 142; Knickerbocker Ins. Co. v. Pendleton, 112 U. S. 696, 710, 5 Sup. Ct. 314, 28 L. ed. 866.

3. The evidence fairly tends to show that plaintiff was under the care and attendance of qualified physicians for two years after he was injured. It is true that there was no medical treatment of his injuries during the greater portion of that time. He was advised to wear and did wear a steel brace on his injured leg. Dr. Hilger testified that the knee would bend in and out instead of only forward as a normal knee should; that the ligaments were ruptured and only an operation or the wearing of a brace would help to restore the knee to its former state of efficiency. In many cases the very purpose for which accident insurance is written would be defeated if there could be no recovery for an injury which did not require the regular attendance of and treatment by a physician. The policy before us does not warrant such a construction. It specifically provides for indemnity against total loss of

time not exceeding 24 consecutive months resulting from bodily injuries directly caused through external, violent and accidental means, which wholly disable the assured from performing every duty of any occupation. The clause in the policy relating to payments during the time the assured was under the care of a physician, must be read in connection with this specific provision for indemnity.

4. The payment in advance of quarterly premiums of $6.60 was required to keep the policy in force. No premiums were paid after April 4, 1915. The policy did not lapse for that reason. The liability of defendant became absolute upon the occurrence of the accident, and payment of indemnity for the injuries then sustained was not contingent upon future payment of premiums. Burkheiser v. Mutual Acc. Assn. 61 Fed. 816, 26 L.R.A. 112; Railway Mail Assn. v. Dent, 213 Fed. 981, 130 C. C. A. 387, L.R.A. 1915A, 314.

Zeitler v. Nat. Casualty Co. supra, is not authority to the contrary, but tends rather to sustain the rule above stated.

5. The answer pleads the settlement and release. The reply denies the settlement, admits that plaintiff signed the release, and alleges that it was signed as a result of the fraud of defendant's agent. The point is made that the reply is a departure from the complaint. The point is not well taken. Finn v. Modern Brotherhood of America, 118 Minn. 307, 136 N. W. 850.

6. One of the assignments of error goes to the giving of the following instruction: "As a matter of fact, they [the company] are legally liable to pay under that policy every thirty days." Without stopping to consider whether this was a correct interpretation of the policy, we hold that; even if it was erroneous, no prejudice resulted because plaintiff waited until the full period of 24 months covered by the policy had elapsed before bringing this action. It was, therefore, immaterial whether defendant could or could not have been made to pay the indemnity in monthly instalments.

7. The assignments of error relating to rulings on the admission of evidence over defendant's objections have not been overlooked, but we are unable to see wherein it was prejudiced by any of the rulings complained of.

Order affirmed.